FILED
2017 Mar-15 PM 01:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) MCMILLAN TRUCKING INC., ) *et al.*, ) ) Defendants. | 7:16-cv-00979-LSC |

MEMORANDUM OF OPINION

Before the Court is Plaintiff Auto-Owners Insurance Company's ("Auto-Owners"), Motion for Judgment on The Pleadings, or, in the Alternative, for Summary Judgment. (Doc. 30.) Auto-Owners brought this case on the basis of diversity jurisdiction, seeking a declaratory judgment that it does not owe Defendants a defense or indemnification in the underlying lawsuit. For the reasons stated below, Plaintiff's motion is due to be granted.

I.  Background

On April 21, 2015, Defendants Christopher Jones ("Jones") and Kenneth Jackson ("Jackson") filed a lawsuit in the United States District Court for the Northern District of Alabama, styled as *Jones, et al., v.*

*Scott Davis Chip Mill, et al.*, 7:15-cv-00661 ("*Jones v. Davis*"). Scott Davis Chip Mill ("the Mill"), Brett Davis ("Davis"), McMillan Trucking, Inc. ("McMillan Trucking"), Mike McMillan ("McMillan"), and Jamie Brasher ("Brasher") were named as defendants in *Jones v. Davis*. After two amendments, the complaint in *Jones v. Davis* sets out claims for racially discriminatory denial of the right to contract under 42 U.S.C. § 1981, civil conspiracy, racketeering in civil violation of 18 U.S.C. § 1962, and unjust enrichment in violation of Alabama law.

According to the Second Amended Complaint in *Jones v. Davis* ("the *Jones* Complaint"), Jones and Jackson operated trucking businesses which hauled wood chips from the Mill in Alabama to Beaumont, Texas. McMillan Trucking is located on the same property as the Mill, and was also engaged in the business of hauling wood chips, including hauling loads from the Mill to Dallas County, Alabama, and other locations. Operations of McMillan Trucking and the Mill are alleged to be intertwined. Brasher was an employee of McMillan Trucking responsible for assigning wood chip loads to truckers, and was supervised by Davis and McMillan.

The *Jones* Complaint further alleges that Brasher, who is white, devised a plan to "requir[e] African American truckers to pay Brasher [a]

$100 cash kickback for certain loads," and that Davis and McMillan, who are also white, helped implement this plan and maintain its secrecy. (Doc. 32-4 at 4.) In accordance with the scheme, Jones and Jackson allegedly were "ask[ed], pressur[ed] and threaten[ed] . . . to pay [Brasher] $100 in cash for each load they hauled to Beaumont, Texas." (*Id.* at 5.) They, and other African Americans, were told that if they did not pay for their loads, they would only get loads that were left over after the paying drivers received their loads. Jones never paid for any loads, while Jackson paid a total of $2,900 for loads.

The *Jones* complaint also claims that the kickbacks helped McMillan and McMillan Trucking, because Brasher gave them priority loads, and because the kickbacks kept Brasher from demanding a higher salary. Jones and Jackson complained about the scheme to Davis, who reported that McMillan knew about the scheme. Instead of ending the practice, Brasher retaliated against Jones and Jackson by telling them that they "were cut off from loads to Texas and [ordering them] to leave the chip mill." (*Id.* at 8.) The complaint alleges that McMillan and McMillan Trucking were aware that Jones and Jackson had been cut off, and that such an action could not have been taken without their approval. Jones and Jackson were thereafter unable to find work at other chip mills and

were forced to sell their trucks and trailers. They claim that due to the discriminatory actions of the *Jones v. Davis* defendants, they suffered loss of business, loss of income, loss of property, long-term damage to their business, mental anguish, hardship and inconvenience, and emotional distress.

Auto-Owners is currently defending McMillan Trucking, McMillan, and Brasher (collectively, "McMillan & Co.") in *Jones v. Davis*, as their purported liability insurance provider, but has reserved the right to withdraw from that defense. From July 8, 2014 until July 8, 2015, McMillan Trucking was covered by an Auto-Owners Tailored Protection Policy of insurance ("TPP"), which included Commercial General Liability ("CGL") coverage. The CGL policy provided coverage against damages that McMillan would be obligated to pay for bodily injury, property damage, personal injury, or advertising injury. However, the policy contained a number of limitations, exclusions, conditions, and terms. During this time period (July 8, 2014-July 8, 2015), McMillan was also insured under an Auto-Owners Commercial Umbrella Insurance Policy ("CUI"), which provided umbrella or excess liability insurance coverage for sums that McMillan would be obligated to pay for bodily injury, property damage, personal injury, or advertising injury. The CUI also

contained various provisions, endorsements, terms, conditions, limitations, and exclusions. The terms of these policies are not in dispute.

The CUI provides liability coverage for an injury "to which this insurance applies caused by an incident." (Doc. 32-8 at 14.) An incident is further defined as "either an occurrence or an offense, whichever is the basis of coverage." (*Id.* at 10.) The CUI also contains exclusions, including exclusion R, which states that personal injuries "[c]aused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict personal injury" are not covered. (*Id.* at 19.)

On June 15, 2016, Auto-Owners filed this action seeking a declaration that it does not owe McMillan & Co. a defense or indemnification in *Jones v. Davis*. On November 28, 2016, Auto-Owners filed its Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment.

II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material"

if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

III. Discussion

In interpreting an insurance policy, "a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it." *Twin City Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Liability insurance coverage encompasses "two separate duties: (1) the duty to defend; and (2) the duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003). Auto-Owners seeks a declaration that it owes McMillan & Co. neither of these duties.

A. Duty to Defend

An insurer owes its insureds a duty to defend "[i]f the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy." *Id*. However, the Court may also "look to facts which may be proved by admissible evidence" in determining if a duty to defend exists. *Id*. at 1064 (quoting *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964)).

1. CGL

Auto-Owners argues that under the terms of the CGL, it does not owe McMillan & Co. a defense in *Jones v. Davis*, because the kinds of injuries alleged by Jones and Jackson are not covered by the policy. The CGL

covers four different kinds of injuries: advertising injury, bodily injury, personal injury, and property damage. Under the CGL, bodily injury is defined as "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these." (Doc. 32-6 at 33.) Personal injury is defined as

> [O]ther than 'bodily injury' arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment
> b. Malicious prosecution
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

(*Id.* at 35.) Property damage is defined as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it.

(*Id.* at 36.) Lastly, advertising injury is defined as

> Injury arising out of one or more of the following offenses:

> a. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement;"
> b. Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement;"
> c. The use of another's advertising idea in your "advertisement;" or
> d. Infringing upon another's copyright, "trade dress" or slogan in your "advertisement."

(*Id.* at 32-33.)

Jones and Jackson allege that they were injured by intentional acts of discrimination which resulted in largely economic harm, as well as emotional distress. These injuries are not advertisement injuries, and do not fit the policy's definition of personal injury. Auto-Insurance claims, and Defendants do not dispute, that Jones and Jackson's injuries do meet the definition of bodily injuries and are therefore covered by Section A of the CGL, which covers bodily injury and property damage liability. Under Section A, the insurance covers claims arising out of bodily injury and property damage only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (*Id.* at 17.)

Auto-Owners argues that the CGL does not cover the injuries in *Jones v. Davis*, because the conduct alleged does not arise out of an "occurrence" as defined in the policy. The CGL defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 35.) The Alabama Supreme Court, in a case involving a policy with the same definition of "occurrence," made it clear that, in determining if an injury is the result of an "occurrence," the court "asks whether the injury was intended or fortuitous, that is, whether the injury was an accident." *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, 157 So. 3d 148, 155 (Ala. 2014) (quoting *Lamar Homes, Inc. v. Mid-Continent Homebuilder, LLC*, 242 S.W. 3d 1, 9 (Tex. 2007)).

Here, the Defendants do not dispute that the *Jones v. Davis* complaint alleges only intentional conduct. Instead, McMillan & Co. argue that there is a dispute of fact because the policy does not define "accident." However, an "accident" has been defined by the Alabama Supreme Court as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005) (quoting *Black's Law Dictionary* 15 (7th ed. 1999)). Further, the Alabama Supreme

Court has made it clear that the crux of the "occurrence" inquiry in this case should be whether the conduct was intentional. *Owners Ins. Co.*, 157 So. 3d at 155. Conduct is intentional if "the actor desires to cause the consequences of an act or believes that the consequences are likely to result from it." *Jackson Cnty. Hosp. v. Ala. Hosp. Ass'n Trust ("Jackson II")*, 653 So. 2d 233, 235 (Ala. 1994).

The *Jones v. Davis* complaint alleges only intentional conduct. Though a court may look outside the facts set out in a complaint when determining if there is a duty to defend, the claims in *Jones v. Davis* are based on allegations that McMillan & Co. discriminated against Jones and Jackson, and discriminatory acts such as the ones alleged are, by their very nature, intentional. *See Jackson Cnty. Hosp. v. Ala. Hosp. Ass'n Trust ("Jackson I")*, 619 So. 2d 1369 (Ala. 1993) (holding that discrimination claims are based on intentional acts and do not constitute occurrences). Therefore, viewing the facts in the light most favorable to the non-movant, there is no occurrence, and Auto-Owners does not owe McMillan & Co. a defense in *Jones v. Davis* under the CGL. Summary judgment as to Auto-Owners's duty to defend under the CGL is due to be granted in Auto-Owners's favor.

    2.    CUI

Auto-Owners also argues that it does not owe McMillan & Co. a defense under the CUI because the injuries in *Jones v. Davis* were not caused by an "incident," as they did not arise out of an "occurrence." In order to determine the meaning of "incident" under the CUI, one must first establish the basis of coverage. If coverage is based upon an occurrence, "incident means an accident." (Doc. 32-8 at 10.) As discussed above, the conduct in this case was not accidental, and therefore, coverage under the CUI does not apply on an occurrence basis. But "[w]hen coverage applies on an offense basis, incident means an offense committed by the insured resulting in personal injury or advertising injury." (*Id.*) Personal injury under the CUI "means injury . . . arising out of one or more of the following offenses: . . . [d]iscrimination or humiliation." (*Id.* at 11.) In this action, coverage applies on an offense basis because McMillan & Co. is alleged to have committed an offense that resulted in personal injury.

Auto-Owners also argues that the injuries that are the subject of *Jones v. Davis* are nonetheless excluded from coverage in the CUI policy. Exclusion R states that "[the] policy does not apply to: . . . [p]ersonal injury or advertising injury . . . [c]aused by or at the direction of any insured with the knowledge that the act would violate the rights of

another and would inflict personal injury or advertising injury." (*Id.* at 19). Under Alabama law, exclusions "must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002) (quoting *Alliance Ins. Co. v. Reynolds*, 494 So. 2d 609, 612 (Ala. 1986)). However, "[w]here there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage." *Id.* (quoting *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993)).

Though the policy specifically includes personal injury arising out of discrimination, in this case there is no dispute that the claims in *Jones v. Davis* allege only intentional and knowing discriminatory conduct. Unlike cases alleging disparate-impact claims, which do not require a showing of intentional or knowing discrimination,[1] in *Jones v. Davis*, the plaintiffs allege that the defendants knowingly implemented a scheme that was purposefully designed to discriminate. Therefore, the "discrimination" in

---

[1] *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, __ U.S. __, 135 S.Ct. 2507, 2513 (2015).

this case is excluded from coverage, because Jones and Jackson cannot prove their claims without showing that McMillan & Co. acted "with the knowledge that the act would violate the rights of another and would inflict personal injury." *See Tanner*, 874 So. 2d at 1067-68 (granting summary judgment for insurer when underlying claims allege intentional conduct and exclusion applies to such conduct). Therefore, viewing the facts in the light most favorable to McMillan & Co., exclusion R applies to exclude coverage for the injuries alleged in *Jones v. Davis*. Summary judgment as to Auto-Owners's duty to defend under the CUI is due to be granted in favor of Auto-Owners.

      B. Duty to Indemnify

Auto-Owners also moved for summary judgment, seeking a declaration that it does not owe McMillan & Co. a duty of indemnification in *Jones v. Davis*. For the same reasons Auto-Owners owes no duty to defend, it owes no duty to indemnify. The duty to defend is broader than the duty to indemnify, and as there is no duty to defend in this case, there is also no duty to indemnify. *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1009. Summary judgment as to Auto-Owners's duty to indemnify is due to be granted in Auto-Owners's favor. *See Tanner*, 874 So. 2d at 1067-68 (no duty to defend or indemnify for intentional conduct).

## IV. Conclusion

For the reasons stated above, summary judgment is due to be granted in Auto-Owners's favor. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this 15th day of March 2017.

_____
L. Scott Coogler
United States District Judge

186291